UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **KATHERINE SAVAGE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| **WALMART INC. and WAL-MART STORES EAST, LP,** | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Katherine Savage, by and through undersigned counsel, hereby complains against Defendants Walmart Inc. and Wal-Mart Stores East, LP as follows:

### INTRODUCTION

1. This case arises under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; and the Maine Human Rights Act ("MHRA"), 5 M.R.S. § 4571 *et seq*.

2. This case challenges Defendants' disability and age discrimination against Plaintiff in violation of the ADA, the ADEA, and the MHRA.

### THE PARTIES

3. Plaintiff Katherine Savage ("Plaintiff" or "Savage") is an individual residing in the City of Ellsworth, County of Hancock, and State of Maine.

1

4. Defendant Walmart Inc. is an Arkansas-based chain of big-box retail stores. According to its website, Walmart Inc. employs 2.1 million individuals worldwide, with nearly 1.6 million employees in the United States alone.

5. According to its website, Walmart Inc. operates more than 10,500 stores and numerous eCommerce websites in 19 countries.

6. Upon information and belief, Walmart Inc. is the parent company that employs all associates in thousands of stores throughout the United States.

7. Walmart Inc. has centralized control over labor relations for all of its stores and interrelated operations with various subsidiaries like Defendant Wal-Mart Stores East, LP.

8. Before the Maine Human Rights Commission ("MHRC"), Walmart Inc. claimed that Plaintiff was employed by Wal-Mart Stores East, LP. However, the policies and procedures applicable to Plaintiff's employment all came from Walmart Inc., located in Bentonville, Arkansas.

9. The disability accommodation policy applicable to Plaintiff's employment applied to "all associates who work for Walmart Inc."

10. The list of training programs completed by Plaintiff came from Walmart Inc., not Wal-Mart Stores East, LP.

11. The spreadsheet of yearly performance reviews produced to the MHRC by Defendants came from Walmart Inc., not Wal-Mart Stores East, LP.

12. The Sedgwick "Accommodation Service Center" that reviewed Plaintiff's request for an accommodation in the fall of 2021 provided Plaintiff with an email address for "One.Walmart.com," not Wal-Mart Stores East, LP.

13. Based on the foregoing, Walmart Inc. and Wal-Mart Stores East LP are an integrated enterprise and/or joint employer under Maine law. Hereinafter, Defendants will be referred to collectively as "Walmart."

14. Throughout Savage's employment and to the present, Walmart has employed more than 500 individuals.

## JURISDICTION AND VENUE

15. Prior to filing this Complaint, Savage dual filed a charge of discrimination with the Maine Human Rights Commission ("MHRC") and the Equal Employment Opportunity Commission ("EEOC"). Plaintiff received a notice of right to sue letter from the MHRC on or about March 29, 2024. Because of the dual filing between the MHRC and the EEOC, and the fact that the MHRC issued a right to sue letter, the EEOC's investigative process has ended.

16. Venue is proper in this Court because all of the discriminatory practices alleged herein occurred in Hancock County.

17. The Court has federal question subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

## BACKGROUND FACTS

18. Savage began working for the Ellsworth Walmart store in 1993 as a sales associate.

19. Savage performed her job duties satisfactorily.

20. Savage mostly worked in the fitting room at Walmart. She worked at the old Walmart store in Ellsworth until Defendant built the new superstore in Ellsworth. Savage went to work in the new superstore sometime in or around 2008-2009.

21. Savage suffers from medical conditions that are considered disabilities under the ADA and MHRA, including diabetes and learning/developmental disabilities, all of which impacts her ability to do a variety of daily activities.

22. Savage's disabilities significantly impact her ability to think, learn, communicate, interact with others, and work. However, she was able to perform her job at Walmart for decades with reasonable accommodations.

23. Savage worked at Walmart for 28 years before Defendant terminated her employment effective November 7, 2021 for an alleged "policy violation."

24. Walmart's stated reason for terminating Savage's employment was pretext for disability and age discrimination.

25. Savage has suffered from learning/developmental disabilities her entire life. Because of these disabilities, Savage had a job coach and/or employment specialist after high school.

26. Walmart was aware of Savage's disabilities because her job coach attended work with her at times during her first year of employment. Sometimes Savage's job coach would stay with her for the entire shift.

27. Throughout Savage's employment, Walmart was aware of her disabilities.

28. Savage's mother (Connie Savage) used to work at the old Ellsworth Walmart store. She advocated for Savage while they both worked at Walmart and made the company aware of Savage's need for accommodations.

29. Because of Savage's disabilities, she is a slow learner. Savage needs extra time to train on new job duties. However, if she is properly trained and given enough 1:1 instruction, Savage can perform her job well.

30. Savage's evaluations over the years reflect that she was a good, reliable, and conscientious employee.

31. Savage had many different managers and team leads come and go over the years. Some were more willing to accommodate her disability than others.

32. One supervisor named Pam treated Savage in a hostile and retaliatory manner at times because of her disabilities.

33. To assist with her disabilities, Savage's parents were a big part of her support system. Both of Savage's parents had health problems, and both passed away in 2019. This loss was devastating to Savage, and her supervisor (Pam) knew it.

34. Pam would call Savage into the office and yell at her if Savage was upset about her parents' illness or death. Pam yelled at Savage not to bring her family problems into work, but then Pam would ask Savage questions about her parents while they were working together, which would make Savage cry.

35. Savage has Type II diabetes, but Walmart sometimes forced her to work without breaks. If Savage did not have a break to get a snack, it would affect her blood sugar levels and she would feel like passing out.

36. In 2019, Savage's diabetes got worse, and she had to start taking insulin. Sometimes Savage would call out of work because she could not drive or even stand up without feeling dizzy. Savage's doctor said that she should not go to work if her blood sugar got too low. Walmart knew that Savage had these health problems but ignored them.

37. Savage's brother Darren has taken over some caretaking responsibilities for Savage since their parents passed away. Darren went into Walmart to advocate for Savage when he found out she was forced to work through breaks despite her known diabetes.

38. Throughout Savage's career with Walmart, some of the people she worked with harassed her because of the above-described disabilities.

39. The manager in charge of the Walmart store in Ellsworth at the time of Savage's termination, Al, was aware of her disabilities.

40. At some point during the busy summer season in 2018, Walmart tried to cross train all sales associates to run the registers. Savage had a hard time running the register and was easily overwhelmed and confused because of her disabilities.

41. Walmart asked Savage to obtain a doctor's note stating that she could not run the cash register.

42. On September 4, 2018, Savage's doctor wrote a note that Savage provided to Walmart, which stated as follows: "The above individual is my patient. She has a history of learning disability, is having difficulty understanding and does not have the skill needed to operate a cash register. This letter is to document her learning disability."

43. Walmart engaged in an ongoing, continuous violation of the ADA and MHRA between 2018 and the time of her termination on November 7, 2021.

44. Walmart transferred Savage to the deli at one point and she did a good job in that position. However, in the summer of 2021, Savage suffered from bone spurs in her shoulder. This condition was aggravated by operating the slicer and other deli equipment. Savage missed a couple of days of work due to her shoulder injury.

45. Walmart told Savage she had too many call outs (5 or 6) and she needed to call Walmart's third-party benefits administrator, Sedgwick, to ask for leave. Savage called Sedgwick to ask for her absences to be protected.

46. On August 17, 2021, Walmart's third-party benefits administrator, Sedgwick Claims Management Services, Inc. ("Sedgwick"), sent Savage a letter entitled: "Accommodation Request Acknowledgment & Document Request."

47. The same day, August 17, 2021, Savage obtained a letter from her physician indicating that she had work-related restrictions not to lift over ten pounds.

48. Walmart's August 17, 2021 letter only gave Savage until September 6, 2021 to return a medical questionnaire, which was neither reasonable nor practicable

7

under the circumstances, in violation of the Federal regulations implementing the ADA.

49. The deadline to obtain medical certification was not reasonable or practicable because Savage had obtained a note from her physician the very same day of Sedgwick's letter, August 17, 2021. In addition, the timeframe was not reasonable or practicable because of Savage's disabilities.

50. Despite Sedgwick denying Savage's leave or accommodation request, Walmart ended up transferring Savage back to the dressing room from the deli.

51. When Savage returned to working in the fitting room in August of 2021, her team leads were younger employees named Stacy, Brenda, and Katrina.

52. Just before Walmart terminated Savage, the Ellsworth store put a new phone in the fitting room department where Savage had worked for years. Her superiors (including the team leads) knew that Savage got easily frustrated and confused because of her learning disability if she did not get adequate training on something like a new phone system.

53. Toward the end of Savage's employment, the phone rang in the fitting room and a customer got upset with her, because she was slow trying to figure out how to put the customer on hold and transfer him to the correct department.

54. Savage tried to transfer the customer to another department twice, but no one picked up the phone. She walked over to the electronics department the customer wanted to speak with to try to get help, but no one was there. Savage got frustrated and flustered because she did not know how to work the new phone system.

The customer got upset with Savage and called back, asking to speak with her manager.

55. After that, Stacy and Katrina called Savage into the office and told her that Walmart had to let her go because a customer complained about the phone call incident.

56. Walmart's policy is to have a manager on duty present when someone is terminated, but the store manager was not in the office when Stacy and Katrina fired Savage. No one asked Savage what happened with the customer who supposedly complained about her.

57. Walmart's actions in terminating Savage over a customer complaint that was not her fault amounted to pretext for disability and/or age discrimination.

58. Walmart knew that Savage needed accommodations for her obvious disabilities but failed to accommodate her.

59. Walmart failed to engage in the interactive process with Savage.

60. Throughout her employment and on a continuing basis, Walmart regarded Savage as disabled.

61. The customer who got upset with Savage over the phone incident did so because of her disability, and therefore Walmart's decision to fire Savage amounted to disability discrimination under the ADA and MHRA.

62. Walmart also discriminated against Savage based on her age. Savage was 51 years old when Walmart fired her. Most of the sales associates Savage worked with were much younger. For example, Chris was in his twenties or thirties. Stacy

was in her thirties. Al and Katrina were both much younger than Savage. Walmart treated the younger sales associates better than they treated Savage.

63. Upon information and belief, as further evidence of Walmart's discrimination against older workers, Defendant tried to force an older employee named Wendell to quit or be fired.

64. Walmart's violations of state and federal law alleged herein were undertaken willfully or knowingly.

## COUNT I – DISABILITY DISCRIMINATION UNDER THE ADA
(42 U.S.C. § 2000e *et seq.*)

65. Plaintiff repeats the allegations contained in Paragraphs 1 through 64 of the Complaint as if fully set forth herein.

66. At all times herein relevant, Savage was a qualified individual with a disability within the meaning of the ADA.

67. Defendant engaged in unlawful discrimination against Savage in violation of the ADA because of her disabilities.

68. Defendant's stated reasons for terminating Savage's employment were pretext for disability discrimination.

69. Walmart regarded Savage as disabled.

70. Savage had a record of a disability.

71. Defendant failed to provide Savage with all of the reasonable accommodations that were necessary for her disability in order to perform the essential functions of her job.

72. As a result of Defendant's discriminatory actions, Savage has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Katherine Savage requests that the Court award her damages in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## COUNT II – DISPARATE IMPACT UNDER THE ADA
**(42 U.S.C. § 2000e *et seq.*)**

73. Plaintiff repeats the allegations contained in Paragraphs 1 through 72 of the Complaint as if fully set forth herein.

74. Defendant's policies and procedures as applied to Savage had a disparate impact on her because of her disabilities.

75. Walmart claimed that all associates in the Ellsworth store were required to answer the phone when it rang. Walmart's actions in requiring Savage to answer and transfer calls on a new phone system, which caused significant undue stress that should have been obvious to Walmart based on Savage's history, had a disparate impact on Savage as a disabled employee compared to non-disabled employees who did not suffer from the same conditions.

76. Walmart's policies and procedures for requesting accommodations through its third-party claims administrator Sedgwick had a disparate impact on

11

Savage as an employee with various learning disabilities, because Savage needed more time due to her disability to respond to requests for information.

77. Walmart's actions in terminating Savage's employment for becoming frustrated with a customer had a disparate impact on her. Walmart knew that Savage's disabilities caused her to become flustered and stressed in confusing situations. Walmart's policies as applied to Savage without regard for her disabilities caused a disparate impact on her as compared to non-disabled employees.

78. As a result of Defendant's discriminatory actions, Savage has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Katherine Savage requests that the Court award her damages in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## COUNT III – FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS
### (42U.S.C. § 2000e *et seq.*)

79. Plaintiff repeats the allegations contained in Paragraphs 1 through 78 of the Complaint as if fully set forth herein.

80. Despite decades of awareness that Savage suffered from multiple disabilities, Walmart repeatedly failed to engage in the interactive process with her.

81. From the moment Savage was hired in the 1990s, continuing through her difficulties working the cash register in 2018, the loss of her parents in 2019

which caused emotional problems, her worsening diabetes, and then culminating with her becoming frustrated over the new phone system in 2021, Walmart knew that Savage's disabilities required various forms of reasonable accommodation.

82. Walmart repeatedly had to accommodate Savage's disabilities over the years in order to enable her to perform the essential functions of her job, yet Walmart failed to engage in or document any two-way discussions with Savage about her need for accommodations.

83. Walmart failed to engage in an appropriate interactive process with Savage each time that it became clear she required reasonable accommodations to perform the essential functions of her job.

84. As a result of Defendant's discriminatory actions, Savage has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Katherine Savage requests that the Court award her damages in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

### COUNT IV – AGE DISCRIMINATION IN VIOLATION OF THE ADEA
### (29 U.S.C. § 621 *et seq.*)

85. Plaintiff repeats the allegations contained in Paragraphs 1 through 84 as if fully stated herein.

86. At the time of her termination, Savage was a member of a protected class based on her age.

87. Walmart had a history of treating older workers less favorably than similarly situated younger workers.

88. The team leads who terminated Savage and complained about her performance were significantly younger than her.

89. Multiple younger employees have had incidents or altercations with customers, but they have not been treated or scrutinized as harshly as Savage.

90. Savage is aware of younger employees swearing at customers, under completely different and more egregious circumstances that what occurred with the phone incident leading to her termination, yet those younger employees have not been terminated.

91. As a result of Walmart's discriminatory actions, Savage has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Katherine Savage requests that the Court enter judgment in her favor and against Defendants and award her damages in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded by law.

## COUNT V – VIOLATION OF THE MAINE HUMAN RIGHTS ACT
### (5 M.R.S. § 4571 *et seq*.)

92. Plaintiff repeats the allegations contained in Paragraphs 1 through 91 of her Complaint as if fully set forth herein.

93. For the reasons set forth above, unlawful discrimination and retaliation has taken place within the meaning of the Maine Human Rights Act.

94. As a result of Walmart's discriminatory actions, Plaintiff has suffered and is entitled to damages, including but not limited to: lost wages and benefits, compensatory damages including emotional pain and suffering and lost enjoyment of life, liquidated and punitive damages, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Katherine Savage respectfully requests that the Court enter judgment in her favor and against Defendants and award her compensatory damages, lost wages, liquidated damages, punitive damages, reasonable costs and attorney's fees, pre- and post-judgment interest, and such further relief the Court may deem proper.

## JURY TRIAL DEMAND

Plaintiff Katherine Savage hereby demands a jury trial on all matters so triable under the laws and Constitution of the United States and the State of Maine.

                                          Respectfully submitted,

Dated: June 26, 2024                    */s/ Laura H. White*

                                          _____
                                          Laura H. White, Bar No. 4025
                                          *Attorney for Plaintiff*
                                          WHITE & QUINLAN, LLC
                                          62 Portland Rd., Suite 21
                                          Kennebunk, ME 04043
                                          (207) 502-7484
                                          [lwhite@whiteandquinlan.com](mailto:lwhite@whiteandquinlan.com)


                                          */s/ Danielle Quinlan*

                                          _____
                                          Danielle Quinlan, Bar No. 5480
                                          *Attorney for Plaintiff*
                                          WHITE & QUINLAN, LLC
                                          62 Portland Rd., Suite 21
                                          Kennebunk, ME 04043
                                          (207) 502-7484
                                          [dquinlan@whiteandquinlan.com](mailto:dquinlan@whiteandquinlan.com)